Dickman, J.
The petition of Kinney, the plaintiff in the original action, having been dismissed and judgment rendered against him, to which he took no exception, and instituted. no proceeding in error, the only questions which we need consider are, (1.) Whether Kernohan, as against Coddington, is entitled to be first paid his lien out of the proceeds of the sale of the mortgaged premises; and, (2.) Whether Durham is entitled to credit for his payments, or any portion thereof, upon the note of $3,250, executed by him to McGill or order, on November 26, 1879, made payable one year after date, and secured by mortgage on real estate.
I. As conceded in the agreed statement of facts, McGill, being indebted to Kernohan, assigned and transferred to him ap collateral security, before the maturity of Durham’s note for the above named amount, the mortgage executed to secure the payment of the same, and what purported to be the genuine note itself, but which proved to be a forgery of the note. The assignment on the mortgage reads as follows: ‘ For value received, I assign and transfer the within mortgage and the note secured thereby to Robert Kernohan, his representatives and assigns. July 21, 1880. Wm. R. McGill.” After the maturity of the note, to wit, on February 22,1881, McGill being also indebted to Coddington, indorsed and delivered to him, as collateral security, the genuine note. Coddington relying upon the promise of McGill, to deliver to him the mortgage — which he never did deliver — received the note in good faith, and for value, and without any knowledge or information as to the previous assignment of the mortgage to Kernohan, until proved on the trial. And Kernohan received the forged note and mortgage and contract of assignment thereof, in good faith, and for value, and with *17 out any knowledge or information as to the forgery, until the forgery was proven on the trial.
Prior to the adoption of the Code of Civil Procedure, in an action at law by the indorsee and holder of a promissory note payable to any person or order, against the maker, the maker could not, when- he did not deny the signature and indorsement, defend against the indorsee on the ground that he was not the owner of the paper; nor could a third party, except in equity, intervene and claim the note. Sections 1 and 2, act of February 25,1820, 1 S. & C. 862; sections 3171, 3172, Revised Statutes; Way v. Richardson, 5 Gray, 412.
Section 3172 of the Revised Statutes provides, that ap. indorsee, to whom such note is made payable by indorsement, may, in his own name, institute and maintain an action thereon, against the maker. But by section 4993 of the Revised Statutes, (formerly sections 25 and 26 of the Code,) all actions must be prosecuted in the name of the real party in interest, except as provided in sections 4994 and 4995. This provision of the Code applies to negotiable paper. If, therefore, the note is not transferred to the indorsee in good faith, and upon good consideration, before maturity, it is a good defense for the maker to show, that the indorsee is not the real party in interest, unless he is authorized to sue under sections 4994 or 4995; and the real owner may intervene, and by cross petition, obtain the relief to which he is entitled, as against the indorsee or holder who is the apparent owner. Kernohan, accordingly, in his cross-petition claims that the note for $3,250, was never lawfully assigned to or held by Coddington; that the mortgage security was never owned or held by Coddington, and that he has no lien on, or interest in the mortgaged premises; and that he, Kernohan, is the owner of the note and mortgage, and has the first and best lien on the real estate in the mortgage described.
An issue of ownership is thus presented, between the two claimants of the note and mortgage, both claiming to derive a good title from McGill the payee. As between Kernohan and McGill, the ownership, beyond dispute, passed from the payee to Kernohan. Before the maturity of the note, the *18 payee, for value, assigned and transferred to Kernohan in writing, the mortgage and the note thereby secured. The mortgage was delivered at the time of the assignment, and by the simultaneous indorsement and delivery of the forged note, as evidence of the debt secured, Kernohan became the holder and owner of the equitable title to the genuine note. It was negotiable paper, to which he acquired title before it fell due, for a good consideration, and without notice of any defect in the instrument that was delivered. While McGill, by retaining the genuine note, may have been its apparent owner, he was, as to Kernohan, a fraudulent holder, and the latter, had he discovered the fraud, might have cmnpelled McGill to deliver to him the genuine paper. As to legal obligation, the position of McGill was not very different from what it would have been had he delivered the genuine note to Kernohan and afterwards stolen it from him. McGill, after the transfer, had no longer any interest in the note or mortgage, and, at most, was only a trustee for Kernohan.
What now are the rights of Coddington ? The genuine note, indorsed by the payee in blank, was indorsed and delivered to him when overdue. It came to him dishonored, for the faét that it was unpaid after maturity was a circumstance of suspicion. Such a note past due, no longer represented a distinct and definite credit, or money to be paid at a certain period. Coddington, in taking the paper, was thus put upon inquiry. He knew that the note was secured by mortgage, and was put upon his guard when the mortgage, his main security, was not produced at the time the note was indorsed and delivered. McGill, at the time, promised to deliver to him the mortgage, but he never did deliver it. Coddington relied upon the promise, and took the risk. Had he exercised the requisite care and diligence, he might have found that the mortgage was no longer in the possession of McGill, but had, seven months before, been assigned and transferred to Kernohan. Coddington, we think, should be held as having constructive notice of the rights of Kernohan in the note and mortgage. In Sterry v. Arden, 1 John. Ch. 261, Chancellor Kent uses the language: “ I hold him chargeable with *19 constructive notice, or notice in law, because he had information sufficient to put him upon inquiry.” Whenever a party has information or knowledge of. certain extraneous facte, which of themselves do not amount to nor tend to show, an actual notice, but which are sufficient to put a reasonably prudent man upon inquiry respecting a conflicting interest, claim, or right; and the circumstances are such that the inquiry, if made and followed up with reasonable care and diligence, would lead to a discovery of the truth — to a knowledge of the interest, claim or right, which really exists; the party is absolutely charged with a constructive notice of such interest, claim or right. The presumption of knowledge is then conclusive. 2 Pom. Eq. Juris., § 608.
Coming into possession of the note as he did, Coddington should be in no better position than McGill, so far as Kernohan is concerned, and should stand in the relation of a trustee for Kernohan. Negotiable paper, not paid at maturity, being regarded as dishonored, that fact is equivalent to notice that there is something wrong with it; and he who purchases it when so overdue, obtains only such title and rights as were had by his vendor. 1 Edw. Bills, § 517, and cases cited.
In Crossby v. Ham, 13 East. 498, the rule is laid down, that one who acquires the bill or note after maturity, is chargeable with constructive notice of any flaw in the right or title of his transferrer. And in Angle v. Insurance Company, 92 U. S. 341, it is held, that a person who takes a bill which, upon the face of it, was dishonored, cannot be allowed to claim the privileges which belong to the lond fide holder. If he chooses to receive it under the circumstances, he takes it with all the infirmities belonging to it, and is in no better condition than the person from whom he received it. . The authorities are numerous to the effect, that the purchaser of an overdue or dishonored bill, who buys it from one who is not the owner, and who is not authorized to sell, acquires no title as against the true owner. Spencer, J., in Henderson v. Case, 31 La. Ann. 215, applying to negotiable instruments the general principle that governs the transfer of personal property, says, that after dishonor, the bill or note falls under *20 the dominion of that fundamental rule of property, that, “ the sale of the thing of another is void.” “ Purchasers of notes or bonds past due take nothing but the actual right and title of the vendors.” Chase, C. J., in Texas v. White, 7 Wall. 735. This species of property, when purchased overdue from one who is not the real owner, and has no authority to sell, is thus placed in the same class with other goods, and made subject to the well recognized rule, that if the seller was not the owner, and had no authority from the owner to sell, the buyer will have no title whatever to the property he has bought, as against the true owner, although purchased in the ordinary course of trade. Roland v. Gundy, 5 Ohio 202. Buying the paper after it is dishonored, the purchaser, who, when put on his guard does not seek the knowledge which he might obtain by using reasonable diligence, cannot complain, if the law charges him with constructive notice of such infirmity of title, as attaches to the instrument in the hands of him from whom he acquired it, and permits him only to stand in the shoes of his vendor or indorser.
Nor is the indorsee or purchaser after maturity placed in such situation, only as regards equities that may exist between the maker'of the note and the payee who indorsed or transferred the instrument. It is held' in England, that if there be an equity attaching directly to the bill or note itself it may be asserted against an indorsee after maturity, by a third part}1' who claims the right to follow the bill. And Mr. Daniels, in his work on Negotiable Instruments, says: “ If the equity be a claim of some right to the instrument directly attached to it, we perceive no good reason why it may not be asserted against an indorsee after maturity, by any party whatsoever.” § 7265. In the case at bar, tine outstanding equitable title in Kernohan to the note in question, was an equity attaching to the instrument itself, which he might assert against Coddington, the indorsee, after maturity.
This doctrine is well illustrated in the case, In re European Bank, L. R. 5 Ch. App. 358, where bills transferred after maturity, were purchased with money stolen from one *21 who claimed the bills as owner. Demetrio Papa, the manager of the Oriental Bank, abstracted moneys of that bank, and with them bought certain overdue bills of exchange. In April, 1867, the Eastern Bank, promoted by Papa, was registered, of which, until the following July, Papa was the sole director. These bills, Papa sold to the Eastern Bank, and paid himself for them out of its funds. The Eastern Bank, as the holder, having proved the bills against the company on which they were drawn and accepted, to wit, the European Bank, it was held, that the claim of the Oriental Bank to the bills, as having been purchased with its money, was an equity attaching to the bills; that the Eastern Bank having purchased them overdue, took subject' to this equity. “ The bills,” said Sir G. N. Giffard, L. J., “ were overdue when the Eastern Bank took them; there were equities affecting the bills, and the Eastern Bank has no better title, either legal or equitable, than Demetrio Papa.” In this case, the court followed the rights of third parties, although their connection with the bills, or title to the same, was only an equitable one founded upon the doctrine of resulting or presumptive trusts. '
That Coddington, as indorsee of the note after maturity, acquired no better title to it than McGill had, as against Kernohan, finds ample support in the case of Osborn v. McClelland, 43 Ohio St. 284. Mrs. Osborn, for value received, made and delivered to Mrs. Faxon hef negotiable note, payable to the order of Mrs. Faxon in five years, secured by mortgage. Two years before the same became due, Mrs. Faxon, without consideration, and solely for the accommodation of Bartlit & Smith, bankers, loaned the same temporarily to them, to enable them to use the same as collaterals for a loan to meet a present emergency, Bartlit & Smith promising to safely keep and return them. Bartlit & Smith did not use them, but they were suffered to remain in their custody until after the note became due, when Smith, the survivor of Bart-lit & Smith, without the knowledge of Mrs. Faxon, or without authority from her, hypothecated them to McClelland by delivery, merely saying the note would be paid. McClelland *22 took the same in good faith, and for full value, but without inquiry, guaranty, or indorsement by Smith, relying solely on his possession and the blank indorsement of Mrs. Faxon that Smith was the owner. It was held, that McClelland having acquired the note after due and without inquiry, acquired no better title than Smith had, and as Smith had neither title nor interest which was good against Mrs. Faxon, he transferred none to McClelland that in equity gave him the right to foreclose the mortgage as against the real owner.
Smith was, in fact, a mere bailee or custodian, with no interest in the note. He was, however, lawfully in possession of it as legal holder, which, with the indorsement in blank by Mrs. Faxon, were badges of ownership. The mortgage was hypothecated and delivered with the note to McClelland, and its absence therefore could not, as in the case at bar, excite suspicion and prompt inquiry. But, the note being past due and discredited when transferred to McClelland, he was not permitted to divest Mrs. Faxon of the true ownership. If Smith, into whose custody the note had lawfully come, could confer upon his transferee ho better right or title than he himself had, still less could McGill, who held the genuine note through gross fraud practised upon Kernohan, give a better right or title to it than he himself had.
In the case of Greenwell v. Haydon, 78 Ky. 332, there was a contention between the appellant and appellee as to the ownership of a coupon bond. Coeer, J., in delivering the opinion of the court said : “ There is another class of cases in which the title to the obligation was involved. The case at bar belongs to that class. There is no question here between the holder and the maker. It is a question as to the right to receive whatever sum the maker may owe, and not as to whether ¿he maker shall pay. his obligation in whole or in part. This distinction seems not to have been always kept in view, and, as a natural result, the authorities are in some confusion, decisions in one class of cases being often quoted in the discussion of cases belonging to another class.” But, the conclusion reached in the opinion was, that whoever takes a bill or negotiable note after maturity, takes it, so far as the *23 title to, and integrity of the paper is concerned, upon the credit of the person from whom he receives it. He gets whatever right and title that person had and no more.
II. Is Durham, the maker, entitled to credit, as against Kernohan, for the several sums paid by him to McGill on the note ? Those payments were made in part before the transfer of the note and mortgage to Kernohan, and before the maturity of the note; and partly, after the indorsement and delivery of the genuine note to Coddington, to wit: after its maturity. But, when Durham made payments on his note from time to time to McGill, the note was not produced, and no receipt or memorandum of payment was ever noted on the instrument, except one indorsement of interest on the day of maturity; McGill stating to Durham, that he would credit the payments upon his note, when he went to the Safe Deposit, where the note was kept for safety; and Durham relying upon the statement, without seeing that the credit was actually given.
The rule is well established, that part payment made on a negotiable instrument should be minuted or entered on the paper itself; and when the instrument comes into the hands of a bond fide holder for value, before maturity, with no memorandum or other notice of part payment thereon, it cannot be set up as a defense against him. 8 Randolph on Com. Paper, § 1414. In Brayley v. Ellis, 71 Iowa, 155, it is said that, ordinarily, the maker of a note, when he makes a partial payment thereon, sees that it is properly indorsed on the note. In that case, where the mortgagee of land sold and assigned the secured notes before maturity, and afterwards fraudulently, and without the knowledge of his assignee, received from the mortgagor, who was led to believe that he still owned the notes, a partial payment thereon, taking only a receipt therefor, and the mortgagor afterwards sold the land to another, it was held, in an action by the assignee to foreclose the mortgage, that he was entitled to recover, as against the mortgagor and the land, the whole amount of the notes, regardless of the partial payment so negligently made by the mortgagor. See also Clark v. Igelstrom, 51 How. Pr. 407; *24 Chit. Bills, margl. 423; Cooper v. Davies, 1 Esp. R. 463; 2 Edw. Bills, § 783; Brown v. Blydenburgh, 7 N. Y. 141; 1 Jones on Mortgages, § 956.
Five several payments were made, in good faith, by Durham to the payee, of which there was no memorandum on the note. The non-production of the paper at the time, was sufficient to awaken inquiry, and did draw from the payee a promise that he would give the proper credits. Had the genuine instead of the spurious note been transferred to Kernohan, unquestionably, he would have held it free from anjr deduction of payments by Durham that were not apparent on the paper itself. He would not have been subject to other equities between the maker and payee. It is true, McGill did not transfer to Kernohan the genuine note, but a forged note in its stead. Yet, Durham permitted the genuine note, notwithstanding his payments, to continue in all respects as when it first left his hands, with no mark or acknowledgment upon it of the payment of the several sums he paid from time to time; and when McGill transferred the forged instrument to Kernohan, it was the counterfeit presentment of the note as Durham had negligently suffered it to remain, with nothing thereon to indicate a reduction of the amount called for on its face. If Durham had demanded that the note and mortgage be exhibited, in order that his payments might be indorsed on the note, he would have discovered that on July 21, 1880, the mortgage was transferred to Kernohan, and might also have discovered, by due investigation, the fraud of McGill, and the situation and true ownership of the note. Under the circumstances, we think that Durham failed to exercise the ordinary care in having the amounts paid by him properly credited on his note; and, as against Kernohan, no allowance should be made to him for any portion of those amounts, out of the proceeds of the sale of the mortgaged premises.
As to Coddington, an indorsee after maturity, he took the note subject to all payments that had been made by Durham at the time he received the instrument, but freed from apy *25 of the payments made by Durham to McGill after he received the note.
From the aforegoing considerations our conclusion is, that the judgment of the circuit court should be reversed, and that of the court of common pleas affirmed.
Judgment accodingly.